1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GERALD JAY WILSON,                    Case No.  1:24-cv-00542-HBK

12                Plaintiff,               ORDER TO RANDOMLY ASSIGN A
                                           DISTRICT JUDGE
13         v.
                                           FINDINGS AND RECOMMENDATIONS TO
14   J. CASTRO, et al.,                    DISMISS CASE WITHOUT PREJUDICE[1]

15                Defendants.              FOURTEEN-DAY OBJECTION PERIOD

16

17         Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's Complaint.

18   (Doc. No. 1, "Complaint").  For the reasons set forth below, the undersigned recommends the

19   district court dismiss the Complaint without prejudice because it fails to state any cognizable

20   federal claim but afford Plaintiff an opportunity to file an amended complaint.

21                          **SCREENING REQUIREMENT**

22         A plaintiff who commences an action while in prison is subject to the Prison Litigation

23   Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief

24   against a governmental entity, its officers, or its employees before directing service upon any

25   defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and

26   dismiss the complaint, or any portion, if it is frivolous or malicious, if it fails to state a claim upon

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2023).

which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).  The Court's review is limited to the complaint, exhibits attached, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.  *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . .."  Fed. R. Civ. P. 8(a)(2).  Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action.  *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a pro se litigant on how

2

1    to cure the defects.  Such advice "would undermine district judges' role as impartial

2    decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131

3    n.13.

4                    **BACKGROUND AND SUMMARY OF OPERATIVE PLEADING**

5          Plaintiff, a state prisoner proceeding pro se and *in forma pauperis*, initiated this action by

6    filing a civil rights complaint under 42 U.S.C. § 1983 in the Northern District of California.

7    (Doc. No. 1).  The case was transferred to the Eastern District of California on May 7, 2024.

8    (Doc. No. 13).  On August 8, 2024, the undersigned screened Plaintiff's Complaint and found that

9    it failed to state any cognizable constitutional claim.  (*See* Doc. No. 21).  The Court advised

10   Plaintiff of the pleading deficiencies and applicable law and afforded Plaintiff the opportunity to

11   file either: (1) an amended complaint; (2) a notice to stand on the Complaint subject to the

12   undersigned recommending the district court dismiss the Complaint; or (3) a notice of voluntary

13   dismissal.  (*Id*. at 11-12).  On August 28, 2024, Plaintiff filed a Notice to Stand on his Complaint.

14   (Doc. No. 22).

15         The events giving rise to Plaintiff's Complaint occurred at Kern Valley State Prison.  (*See*

16   *generally* Doc. No. 1).  The Complaint names the following as Defendants: (1) J. Castro,

17   Associate Warden and ADA Coordinator at Kern Valley State Prison ("KVSP"); (2) N. Igbinosa,

18   Chief Physician and Surgeon at KVSP; (3) Y. Montes, Health Care Compliance Analyst at

19   KVSP; (4) V. Bojorquez, Health Care Grievance Coordinator at KVSP; (5) S. Rimbach,

20   Associate Warden and ADA Coordinator at KVSP; (6) R. Broomfield, ADA

21   Coordinator/Custody Appeals Coordinator at KVSP; (7) Dr. Rhordanz; (8) Dr. A. Zepp; (9) S.

22   Forlong, Correctional Officer ("CO") at KVSP, Facility C; (10) J. Ecker, CO at KVSP, Facility

23   C; (11) Rowland, CO at KVSP, Facility C; (12) Gracia, CO at KVSP, Facility C; and (13)

24   Ackuendo, Work Exchange Officer at KVSP, Facility C.  (*Id*. at 5-8).  Plaintiff sues all

25   Defendants in their individual and official capacities.  (*Id*. at 47).  Plaintiff's Complaint numbers

26   49 handwritten pages, many of which are faint and difficult to read.  (*See generally id*).

27         The Complaint is disjointed and written in narrative-like fashion advancing several

28   seemingly unrelated claims spanning roughly five years.  The allegations are not arranged in

sequentially numbered paragraphs.  It is not clear whether the extraneous facts are provided by way of background, or whether Plaintiff includes these factual averments in support of a claim.

To the extent discernable, the Complaint alleges that over the course of four years, from 2017 to 2021, various officials at KVSP, including Defendants Zepp and Rhordanz, his primary care physicians, and members of the KVSP Reasonable Accommodations Panel exhibited deliberate indifference to Plaintiff's serious medical needs when they denied his repeated requests for an ADA cell with grab bars by the toilet and a walker with a seat.[2]  (*See generally id*.).  Plaintiff also contends he was denied appropriate housing in retaliation but does not clearly specify the protected conduct that prompted the retaliation.  (*Id*. at 9).  On December 2, 2020, Plaintiff fell in his cell and broke his finger, which he implies would not have occurred if he had been in an appropriate ADA cell.  (*Id*. at 18-19).

The Complaint alleges that after Plaintiff returned from an out-to-court transfer to R.J. Donovan Correctional Facility in June 2018, Defendant Rohrdanz "began slowly taking away Plaintiff's much-needed chronic care pain medications" and did not order Plaintiff's ADA accommodations to be met.  (*Id*. at 10).  Rohrdanz also began scheduling out Plaintiff's appointments 90 days from when requested, instead of the usual 30 days.  (*Id*. at 10-11).

In a seemingly unrelated incident, on February 5, 2019, while Plaintiff was on the "Patio" of his yard, Defendant Forlong told Plaintiff he had to take his hat off while on the yard, despite it being cold out.  (*Id*. at 33-34).  Plaintiff had "never had a run in with . . . Defendant Forlong, for the two . . . year[s] [he was] housed on that Facility."  (*Id*. at 35).

In another seemingly unrelated incident, on May 30, 2019, Plaintiff was attending his self-help group in Dining Hall 2 when officers came to enforce a new security regulation requiring all inmates to be in some form of restraint.  (*Id*. at 30).  Plaintiff informed Defendant Ecker that he could not be placed in handcuffs, per doctor's orders, and Ecker responded with an expletive and told Plaintiff he would be put in handcuffs anyway.  (*Id*.).  After Plaintiff insisted, Ecker finally agreed to put him in waist restraints, again cursing at Plaintiff.  (*Id*.).  Defendant Rowland, who

---

[2] The Complaint notes that Plaintiff's requests were ultimately granted after an attorney from the Prison Law Office interceded on his behalf.  (*Id*. at 27-28).

1   was nearby, told Ecker to "put [the waist restraints on] good an[d] tight," which Ecker agreed to

2   do.  (*Id*. at 31).  The restraints were put on Plaintiff so tightly that they cut off the blood flow to

3   Plaintiff's arms for over an hour and Plaintiff was refused any medical treatment.  (*Id*.).  Plaintiff

4   still has marks on his arms from the restraints, years after the incident.[3]  (*Id*.).  The Complaint

5   alleges that Rowland directed Ecker to put the restraints on tightly in retaliation for a grievance

6   Plaintiff filed against Defendant Rohrdanz on March 24, 2019.  (*Id*.).

7          In yet another apparently unrelated incident, on or about September 21, 2021, Defendant

8   Gracia, a correctional officer in Plaintiff's housing unit, conspired with another inmate to defraud

9   Plaintiff of $427 in Plaintiff's inmate trust account.  (*Id*. at 37-38).  After Plaintiff reported the

10  fraud, Plaintiff was subjected to retaliatory actions by Defendant Gracia including repeated cell

11  searches and seizure of Plaintiff's medical devices.  (*Id*. at 38-39).

12         Finally, on January 28, 2022, Plaintiff was attending his self-help group and was first in

13  line to be searched by Defendant Ackuendo before being admitted to the program.  (*Id*. at 40).

14  Instead of searching Plaintiff, Defendant Ackuendo told Plaintiff he would have to go to the end

15  of the line of ten inmates because searching him would take longer due to his disability, forcing

16  Plaintiff to wait in the cold and rain for more than 30 minutes.  (*Id*. at 40-41).  Plaintiff contends

17  Ackuendo's treatment was retaliation for Plaintiff filing of a grievance against Defendant Gracia.

18  (*Id*. at 42).

19         As relief, Plaintiff seeks $5 million from each Defendant for each cause of action,

20  unspecified injunctive relief, a trial by jury, and costs and fees.  (*Id*. at 47).

21                                        **APPLICABLE LAW AND ANALYSIS**

22         **A.  Statute of Limitations**

23         "A claim may be dismissed [for failing to state a claim] on the ground that it is barred by

24  the applicable statute of limitations only when 'the running of the statute is apparent on the face

25  of the complaint.'"  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969

26  (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

27

28  [3] The Complaint states that Plaintiff still has marks "even [though] these events took place over three (3) years ago." (Doc. No. 1 at 31).  The incident in fact took place nearly five years ago.

1   Such a dismissal is proper so long as Plaintiff is provided an opportunity to amend in order to

2   allege facts which, if proved, might support tolling.  *Cervantes v. City of San Diego*, 5 F.3d 1273,

3   1276–77 (9th Cir. 1993) *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning*

4   *Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (court may raise the defense of statute of limitations

5   *sua sponte*), overruled on other grounds by *Gonzalez v. Arizona*, 677 F.3d 383, 389 (9th Cir.

6   2011) (en banc); *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (upholding *sua sponte*

7   dismissal under 28 U.S.C. § 1915(e)(2)(B) of prisoner's time-barred complaint).

8          Because section 1983 contains no specific statute of limitation, federal courts apply the

9   forum state's statute of limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927

10   (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192

11   F.3d 911, 914 (9th Cir. 1999).  California's statute of limitations for personal injury actions is two

12   years.  *Jones*, 393 F.3d at 927 (citing Cal. Code Civ. Proc. § 335.1).  The law of the forum state

13   also governs tolling.  *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Hardin v. Straub*, 490

14   U.S. 536, 538–39 (1989)); *Jones*, 393 F.3d at 927 (noting that in actions where the federal court

15   borrows the state statute of limitation, the federal court also borrows all applicable provisions for

16   tolling the limitations period found in state law).  Under California law, the statute of limitations

17   for prisoners serving less than a life sentence is tolled for two years.  Cal. Code Civ. Proc..

18   § 352.1(a); *Johnson v. California*, 207 F.3d 650, 654 (9th Cir. 2000), overruled on other grounds,

19   543 U.S. 499 (2005).  Accordingly, the effective statute of limitations for most California

20   prisoners is four years (two-year limitations period plus two years statutory tolling).

21          Unlike the length of the limitations period, however, "the accrual date of a § 1983 cause

22   of action is a question of federal law that is not resolved by reference to state law."  *Wallace*, 549

23   U.S. at 388; *Hardin*, 490 U.S. at 543–44 (federal law governs when a § 1983 cause of action

24   accrues).  "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute

25   of limitation begins to run, when the wrongful act or omission results in damages."  *Wallace*, 549

26   U.S. at 391.  Put another way, "[u]nder federal law, a claim accrues when the plaintiff knows or

27   has reason to know of the injury which is the basis of the action."  *Maldonado*, 370 F.3d at 955;

28   *Two Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

It is clear from the face of the Complaint that some of the incidents giving rise to Plaintiff's claims occurred more than four years before he filed his Complaint on April 4, 2024. For example, his claims based on his initial denial of an ADA cell at KVSP in March 2017, his claim against Defendant Rohrdanz for taking away his chronic pain medications beginning in June 2018, his claim against Defendant Forlong based on a February 5, 2019 incident in which Forlong made Plaintiff take off his warm cap, and his claim against Defendants Ecker and Rowland for placing overtight waist restraints on him in May 2019 all appeared to be time-barred.

Wilson's claims could be considered timely if, in his Complaint, he alleged facts sufficient to show the limitations period may be equitably tolled. *See Cervantes*, 5 F.3d at 1276–77. Generally, federal courts also apply the forum state's law regarding equitable tolling. *Fink*, 192 F.3d at 914; *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988). Under California law, however, Plaintiff must meet three conditions to equitably toll the statute of limitations: (1) he must have diligently pursued his claim; (2) his situation must be the product of forces beyond his control; and (3) Defendants must not be prejudiced by the application of equitable tolling. *See Hull v. Central Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1335 (Cal. Ct. App. 1994); *Addison v. State of California*, 21 Cal.3d 313, 316–17 (1978); *Fink*, 192 F.3d at 916. Wilson has not pled any facts which would explain why he did not diligently pursue his claims arising between 2017 and 2019 or what "forces beyond his control" prevented him from filing this action earlier. Thus, he has not plausibly alleged a claim for equitable tolling. *See Cervantes*, 5 F.3d at 1277; *Iqbal*, 556 U.S. at 679; *Hinton v. Pac. Enters*., 5 F.3d 391, 395 (9th Cir. 1993) (plaintiff carries the burden to plead facts which would give rise to equitable tolling); *see also Kleinhammer v. City of Paso Robles*, 385 Fed. App'x. 642, 643 (9th Cir. 2010). Rather than address the apparent statute of limitations issue, Plaintiff elects to stand on his Complaint. Thus, the Court presumes that Plaintiff disputes that the claims noted above untimely.

**B. Rule 8**

Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Rule 8 states that "[e]ach allegation must be simple, concise, and direct." *Id*., 8(d)(1). A complaint having the factual elements of a cause of action scattered

throughout the complaint and not organized into a "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a). *See Sparling v. Hoffman Constr. Co*., 864 F.2d 635, 640 (9th Cir. 1988); *see also McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996). Rule 10(b) of the Federal Rules of Civil Procedure also requires a plaintiff to state claims in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Moreover, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id*. It is not the responsibility of the Court to review a rambling narrative to determine the number and nature of a plaintiff's claims. *Howard v. Nunley*, 2009 WL 30304, at *1 (E.D. Cal. Jan. 6, 2009).

To ensure compliance with Rule 8, courts of the Eastern District of California generally limit complaints to twenty-five pages. *See Lal v. United States*, 2022 WL 37019, at *2 (E.D. Cal. Jan. 3, 2022); *Williams v. Corcoran State Prison*, 2022 WL 1093976, at *1 (E.D. Cal. Apr. 12, 2022). The page limit includes the complaint itself and any exhibits, for a total of twenty-five pages. *See Rivas v. Padilla*, 2022 WL 675704, at *2 (E.D. Cal. Mar. 7, 2022). "[A] lengthy complaint can violate Rule 8 if a defendant would have difficulty responding to the complaint." *Skinner v. Lee*, 2021 WL 6617390, *2-*3 (C. D. Cal. May 20, 2021) (citing *Cafasso v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1059 (9th Cir. 2011). A court has the power to dismiss a complaint when a plaintiff fails to comply with Rules 8's pleading directives. *McHenry*, 84 F.3d at 1179; *Nevijel v. North Coast Life Ins. Co*., 651 F.2d 671, 673 (9th Cir. 1981).

Plaintiff's Complaint numbers 49 handwritten pages, and consists of a lengthy, rambling narrative spanning five years. The Complaint is not organized into numbered paragraphs, as required by Fed. R. Civ. P. 10(b), nor does it identify distinct claims or counts. It fails to set forth claims in "short and plain" statements what each Defendant did to violate his rights, and thus violates Rule 8. *See Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (recognizing that Rule 8 can be violated when the plaintiff provides too much information). Due to these deficiencies, the Court cannot meaningfully evaluate the Complaint, as required by 28 U.S.C. § 1915A(a). *See Howard*, 2009 WL 30304, at 1.

As set forth more below, the Complaint also includes numerous unrelated claims that

8

1   cannot be properly joined in a single lawsuit.  The Court warned Plaintiff in its August 8, 2024

2   screening order that if he failed to file an amended complaint containing a more focused set of

3   claims against a smaller set of Defendants, he may be subject to sanctions, including the

4   undersigned recommending the District Court dismiss this case for failure to comply with Rule 8.

5   (Doc. No. 21 at 9).  Plaintiff elected to stand on his Complaint rather than file an amended

6   complaint curing the deficiencies in the initial Complaint.  Thus, the undersigned recommends the

7   district court dismiss the Complaint based on Plaintiffs failure to comply with Rule 8.

8          **C.  Related Claims and Joinder**

9          The Rules permit a complaint to include all related claims against a party and permit

10  joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of

11  transactions or occurrences" where "any question of law or fact common to all defendants will

12  arise in the action."  Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added).  But the Rules do not

13  permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit.

14  Further, just "because the claims arose while Plaintiff was at the same institution does not make

15  the claims properly joined."  *Camposeco v. Bordeaux*, 2020 WL 5984420, at *5 (E.D. Cal. Jul.

16  31, 2020).

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party
> asserting a claim to relief as an original claim, counterclaim, cross-
> claim, or third-party claim, may join, either as independent or as
> alternate claims, as many claims, legal, equitable, or maritime, as the
> party has against an opposing party.'  Thus multiple claims against a
> single party are fine, but Claim A against Defendant 1 should not be
> joined with unrelated Claim B against Defendant 2. Unrelated claims
> against different defendants belong in different suits, not only to
> prevent the sort of morass [a multiple claim, multiple defendant] suit
> produce[s], but also to ensure that prisoners pay the required filing
> fees for the Prison Litigation Reform Act limits to 3 the number of
> frivolous suits or appeals that any prisoner may file without
> prepayment of the required fees. 28 U.S.C. § 1915(g).

24  *K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013),

25  aff'd sub nom. *K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791

26  (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir.

27  2007).  Here, the Complaint alleges claims based on at least nine incidents that span five years

28  and involve 13 different Defendants.  The fact that the claims all allege actions by staff within the

same facility is not sufficient to establish that they are related and therefore properly joined.  *See Camposeco*, 2020 WL 5984420 at *5 ("Merely because the claims arose while Plaintiff was at the same institution does not make the claims properly joined.").

Plaintiff's Complaint presents just the sort of "morass" that the PLRA and the joinder rules are intended to prevent.  *K'napp*, 2013 WL 5817765, at *2.  Although some of Plaintiff's claims appear to be related, many are not.  For example, the February 2019 incident involving Defendant Forlong telling Plaintiff to remove his hat while on the yard, the May 2019 incident involving the placement of waist restraints on Plaintiff, the September 2021 incident in which Defendant Gracia defrauded Plaintiff of $427 and the January 2022 incident where Plaintiff was forced by Defendant Ackuendo to wait 30 minutes in the rain for his self-help class have no apparent connection to the denials of Plaintiff's requests for medical accommodations or denial of his requested pain medication.  Nor are these incidents obviously connected to each other, except by Plaintiff's vague contention that all of the Facility C staff have animus against him and are retaliating against Plaintiff on each other's behalf.

The Complaint is devoid of facts alleging that all of these disparate incidents and claims arise from the same transaction, occurrence, or series of transactions or occurrences.  Accordingly, they are misjoined.  If Plaintiff wishes to pursue the claims asserted here, he must file them under separate actions.

**D.  ADA/RA Claims**

Title II of the ADA and the RA apply to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997); *Duffy v. Riveland*, 98 F.3d 447, 453–56 (9th Cir.1996).  To state a claim under the ADA, plaintiff must have been "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong*, 124 F.3d at 1023.  "To establish a violation of [Section] 504 of the RA, a plaintiff must show that (1)[he] is handicapped within the meaning of the RA; (2)[he] is otherwise qualified for the benefit or services sought; (3)[he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal

financial assistance." *Id.*  Because Plaintiff's Complaint suffers from the basic deficiencies noted above, the Court cannot meaningfully evaluate Plaintiff's claims under the ADA and RA. Nonetheless, the Court provided Plaintiff with the applicable law should he wish to proceed on an ADA or RA claim in his amended complaint.

## CONCLUSION

The Court pointed out the above deficiencies in its August 8, 2024 Screening Order.  (*See* Doc. No. 21 at 9, 11-12).  Specifically, the Court advised Plaintiff that his Complaint failed to comply with Rules 8 and 10, contained misjoined claims, and failed to state a claim, but afforded Plaintiff the opportunity to file an amended complaint.  The Court further instructed Plaintiff that is he chose to amend his complaint he must select only those related claims and show a causal connection between a Defendant's actions and/or failure to act and the alleged violation.  Further, given the difficulty in reading Plaintiff's Complaint, the Court directed Plaintiff to ensure that his amended complaint is legible, preferably typewritten or if handwritten he must use dark ink, and the amend complaint may be no more than 25 pages.  The Court advised Plaintiff that he also must identify each cause of action or claim, and then briefly list the facts in support of each cause of action in sequentially numbered paragraphs. The amended complaint should not contain extraneous information, such as the history of Plaintiff's health care issues at other institutions or diary-like descriptions of events.  As noted *supra*, Plaintiff elected not to file an amended complaint, instead wish to stand on his Complaint.

## RECOMMENDATION

Based on the above, the undersigned finds Plaintiff's Complaint fails to comport with the Court's rules of procedure and otherwise fails to state any cognizable claim.  The undersigned recommends that the district court dismiss the Complaint without prejudice to Plaintiff refiling an amended complaint as directed above on those claims that are related and are not barred by the statute of limitations.

ACCORDINGLY, it is **ORDERED**:

The Clerk of Court randomly assign this case to a district judge for consideration of these Findings and Recommendation.

It is further **RECOMMENDED**:

The Complaint (Doc. No. 1) be dismissed under § 1915A for failure to state a claim without prejudice and Plaintiff be afforded an opportunity to file an amended complaint as directed above.

### NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge will review these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    August 29, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

12